RENDERED:  MAY 13, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0626-MR

DEPARTMENT OF REVENUE,
FINANCE AND ADMINISTRATION CABINET,
COMMONWEALTH OF KENTUCKY                    APPELLANT

                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE THOMAS D. WINGATE, JUDGE
                    ACTION NO. 19-CI-00750

MARATHON PIPE LINE, LLC                              APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  The Department of Revenue, Finance and

Administration Cabinet, Commonwealth of Kentucky (hereinafter referred to as

the Department), appeals from a final opinion and order of the Franklin Circuit

Court.  That opinion and order affirmed a final order of the Kentucky Claims

Commission, Tax Appeals (hereinafter referred to as the KCC) which determined that an underground pipeline owned by Marathon Pipe Line, LLC (hereinafter referred to as Marathon) should be classified as tangible personal property. The final order also determined an amount of *ad valorem* tax owed by Marathon for said pipeline. The KCC concluded that the tax amount suggested by Marathon's expert was more accurate and reasonable than the amount proposed by the Department. The Department argues on appeal that the KCC erred in not ruling that the pipeline should be classified as real property. The Department also claims that the KCC should have utilized the tax amount put forward by the Department and its expert. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

Marathon is a subsidiary of Marathon Petroleum Corporation. It is also a public service corporation (hereinafter referred to as a PSC). It owns or leases several thousand miles of pipeline throughout the United States. The pipeline in issue is a 265-mile long tract of underground pipes stretching from Owensboro to a Catlettsburg refinery. The pipeline transports crude oil to the refinery where it is processed and manufactured into gasoline and other products. Marathon's pipeline is located in a specialized economic zone called an activated foreign trade zone.

This case concerns the amount of *ad valorem* taxes owed by Marathon for its pipeline for the years 2014, 2015, and 2016. The parties agree that for the years in question, tangible personal property was being taxed at $0.45 per $100 of value and real property was being taxed at $0.12 per $100 of value. Tangible personal property located in a foreign trade zone, however, was taxed at a special rate of $0.001 per $100 of value. Kentucky Revised Statutes (KRS) 132.020(1)(g).

In 2012, Marathon's pipeline was assessed at a value of $60 million. In 2012, Marathon began a replacement and repair project of approximately 40 miles of its Kentucky pipeline. Following the completion of this project, in 2014, the Department assessed the pipeline's value at just over $242 million. In 2015, the Department valued the pipeline at $225 million, and in 2016 the Department assessed the pipeline's value at $240 million. Marathon protested these assessment values and asserted that the values of the pipeline for those years were $120 million, $106 million, and $106 million. The Department denied the protest, ruling that the pipeline was classified as real property and that the original assessments were correct.

Marathon then filed an appeal to the KCC on December 14, 2017. Extensive discovery took place. The Department hired an expert in property appraisal named Brent Eyre. Mr. Eyre appraised the value of the pipeline at $332,997,450.00 for the year 2014, $386,875,000.00 for the year 2015, and

$386,145,000.00 for the year 2016. Marathon also hired an expert appraiser, Mark Andrews. Mr. Andrews appraised the value of the pipeline at $128,581,000.00 for the year 2014, $124,568,000.00 for the year 2015, and $135,029,000.00 for the year 2016.

The KCC bifurcated the appeal. The first issue to determine was whether the pipeline should be classified as real property or as tangible personal property. After a hearing, the KCC hearing officer entered a recommended order which concluded that the pipeline was tangible personal property as argued by Marathon and not real property as claimed by the Department. Thereafter, a three-day hearing was held to determine the value of the pipeline. The hearing officer entered another recommended order which found the taxable value of the pipeline to be $112,719,894.00 for the year 2014, $106,385,565.00 for the year 2015, and $116,087,260.80 for the year 2016. The KCC adopted the recommended orders and the Department appealed. The Franklin Circuit Court affirmed and this appeal followed.

## ANALYSIS

As this is an appeal from an administrative agency, there is a specific standard of review we must follow. This Court's standard of review for an administrative adjudicatory decision is the clearly erroneous standard. *Stallins v.*

*City of Madisonville*, 707 S.W.2d 349, 351 (Ky. App. 1986). A decision is clearly

erroneous if it is not supported by substantial evidence. *Id.*

> Substantial evidence is defined as evidence, taken alone
> or in light of all the evidence, that has sufficient
> probative value to induce conviction in the minds of
> reasonable people. If there is substantial evidence to
> support the agency's findings, a court must defer to that
> finding even though there is evidence to the contrary. A
> court may not substitute its opinion as to the credibility
> of the witnesses, the weight given the evidence, or the
> inferences to be drawn from the evidence. A court's
> function in administrative matters is one of review, not
> reinterpretation.

*Thompson v. Kentucky Unemployment Ins. Comm'n*, 85 S.W.3d 621, 624 (Ky.

App. 2002) (footnotes and citations omitted).

The Department's first argument on appeal is that Marathon's pipeline

should have been classified as real property. KRS Chapter 136 concerns the

taxation of corporations and utilities, including PSCs. KRS 136.010(1) defines

real property as "all lands within this state and improvements thereon." KRS

136.010(2) defines personal property as "every species and character of property,

tangible and intangible, other than real property." Citing *Payne v. Rutledge*, 391

S.W.3d 875, 879 (Ky. App. 2013), and other cases, the Department argues that the

pipeline is an improvement upon land because it increases the "value or utility" of

the land. The Department also cites to *Cumberland Pipe Line Co. v. Lewis*, 17

-5-

F.2d 167, 174 (E.D. Ky. 1926), which held that a similar underground oil pipeline

should be classified as real property for tax purposes.

The Department also cites to 103 KAR[1] 8:090. That regulation states:

> NECESSITY, FUNCTION, AND CONFORMITY: This administrative regulation classifies certain property as real estate, personalty and manufacturing machinery. The property involved has been the subject of some confusion in the past. This information is helpful to public service companies in classifying new property.
>
> Section 1. The Revenue Cabinet prescribes the following classification of property to be used by public service corporations in reporting under KRS 136.120 et seq. This list is not intended to be complete and comprehends only those items of property whose proper classification has been subject to some confusion in the past.

The regulation then goes on to classify a transmission pipeline as real property.

Even though Marathon classifies the pipeline in question as a trunk line, the

Department claims that a trunk line is a transmission line; therefore, it is real

property.

The KCC and trial court held that the pipeline was personal property

and we agree. We believe the trial court's reasoning behind this conclusion is

persuasive and we adopt it. The trial court stated:

> [Marathon] has embedded pipeline in the ground for the sole purpose of furthering its business. The pipeline carries crude oil to a refinery. The pipeline is buried because of above-ground obstructions, including

---

[1] Kentucky Administrative Regulation.

roadways, bridges, and waterways, and has not adapted to the use of the land above it. The record reflects that the intention of the parties was not to make the pipeline part of the realty, that is, a permanent accession to the freehold. [Marathon] asserts, and the record shows, that the intention of the parties is for the pipe to be moved or replaced when needed. In 2012, [Marathon] underwent a replacement and repair project where approximately forty (40) miles of the pipeline was repaired or replaced. The project consisted of digging portions of the pipe up and moving the pipe. [Marathon's] agreements, including easements and other agreements with landowners documented in the administrative record, show that the intention of [Marathon] was to remove and replace the pipeline when necessary, as done in 2012. Thus, [Marathon's] pipeline is: (1) not annexed to the realty as it is moveable; (2) not adapted to the use or purpose of the land above it; and (3) intended by the parties to be moved and not a permanent accession to the land. [Marathon's] pipeline is, therefore, not real property within the meaning of KRS Chapter 136 as it is not land within the state or an improvement thereon. [Marathon's] pipeline, as the Hearing Officer concluded, is not necessary to the enjoyment of the land above it and does not enhance its value.

The trial court also addressed 103 KAR 8:090. The court determined that the pipeline at issue was described in federal regulatory documents as a trunk line and trunk lines were not listed in 103 KAR 8:090. Furthermore, transmission lines were not defined in the regulation. Finally, we note that none of the briefs filed in this Court points to a part of the record where trunk lines or transmission lines were defined by the parties, absent a comment made by Mr. Andrews, Marathon's property valuation expert, where he stated that trunk lines might be

generally described as transmission lines.[2]  Without some sort of description of the different types of oil pipelines in the record, we cannot make an educated determination as to if they are indeed different.[3]

The trial court and KCC also believed the Department's treatment of the pipeline was not uniform to other similar situations.  We agree.  The classification of property for tax purposes "must be *reasonable*, not *arbitrary*, and this in turn requires classification on the basis of an appreciable relevancy to the subject matter of the legislation." *Gillis v. Yount*, 748 S.W.2d 357, 363 (Ky. 1988) (emphasis in original) (internal quotation marks and citation omitted).  Different classifications of property can be made, but such classifications must be "made to depend upon natural, real or substantial distinctions, inhering in the subject matter, such as suggest the necessity for or propriety of independent legislation in regard to the class specified.  A classification based upon purely artificial, arbitrary or fictitious conditions is unreasonable and will not be permitted." *Id.* (internal quotation marks and citation omitted).

---

[2] We do not find this statement persuasive as authority to define trunk or transmission lines as Mr. Andrews is a valuation expert and not an expert in oil production or pipelines.  Furthermore, Mr. Andrews also stated that he was unfamiliar with Kentucky and federal definitions of trunk lines.

[3] The record in this case is extremely voluminous.  Even if testimony or other evidence was introduced to describe the different types of pipelines, it was not brought to this Court's attention and we will not search the record looking for evidence to support an argument. *Curty v. Norton Healthcare, Inc.*, 561 S.W.3d 374, 379 (Ky. App. 2018).

Here, evidence was presented that a different subsidiary of Marathon Petroleum Corporation, MarkWest Energy, had a pipeline that transported natural gas across a significant distance and the Department classified it as tangible personal property. Furthermore, 103 KAR 8:090 indicates that a gathering line, which is another type of pipeline that transports crude oil, should be classified as personal property, but a transmission line, as previously mentioned, is classified as real property. The Department provides no reason as to why it classifies gathering lines and transmission lines differently.

Based on the foregoing, we conclude that the KCC and trial court did not err in classifying Marathon's pipeline as tangible personal property.[4]

The Department's other argument on appeal is that the KCC and trial court erred by not adopting its valuation. The Department goes on to discuss seven different reasons why the valuation it and its expert propounded was more accurate than the valuation of Marathon and its expert. As previously stated, findings of fact are conclusive if supported by substantial evidence. *Thompson*, *supra*. In addition, we are to defer to the hearing officer's decisions regarding the credibility of the witnesses and the weight of the evidence. *Id.*

---

[4] The *Cumberland* case cited by the Department which holds that an underground oil pipeline is real property is a federal case and not binding on this Court. *U.S., ex rel. U.S. Attorneys ex rel. Eastern, Western Districts of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d 136, 147 (Ky. 2014).

Here, the Department and Marathon both had experts testify regarding the valuation of the pipeline and they both thoroughly explained their processes for determining their valuations. The KCC hearing officer specifically stated that he found Mr. Andrews, Marathon's expert, to be the more persuasive expert. The hearing officer also found Mr. Andrews' valuation more accurate. The hearing officer spent around 12 pages of its opinion discussing the different valuations and why it believed Mr. Andrews' valuation was more accurate and persuasive.

The KCC adopted the hearing officer's recommended order and that became the KCC's final order. The final order was supported by substantial evidence in the form of Mr. Andrews' testimony and the hearing officer specifically stated why he found Mr. Andrews' testimony to be more persuasive. Accordingly, we find no error.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court which affirmed the final order of the KCC. The evidence submitted to the KCC by Marathon was more persuasive than the evidence submitted by the Department. The KCC's final order was not clearly erroneous.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Richard W. Bertelson, III
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Mark F. Sommer
Jennifer Y. Barber
Rachael H. Chamberlain
Louisville, Kentucky